IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROSA RAMOS BOBADILLA,          )
                               )
            Petitioner,        )
                               )
       v.                      )    1:14-CV-205
                               )
JOSE DE JESUS SOSA CORDERO,    )
                               )
            Respondent.        )

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Petitioner Rosa Ramos Bobadilla seeks the return of her minor child, B.F.S.R., to Mexico so that custody of the child can be determined by Mexican courts. She contends the child should be returned to Mexico because he was illegally abducted by his father, respondent Jose De Jesus Sosa Cordero. This matter is before the Court on a petition filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, at 1, 22514 U.N.T.S. at 98 ("the Hague Convention"), and the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11611 ("ICARA"). (Doc. 2.)

The Court held an evidentiary hearing on August 1, 2014, at which Mr. Cordero appeared in person and Ms. Ramos appeared by video feed. All witnesses testified through interpreters. Pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court makes the following findings of fact and conclusions of law. *See Khan v. Fatima*, 680 F.3d 781, 785 (7th Cir. 2012); *Maxwell v. Maxwell*, No. 3:08-cv-254-RJC, 2008 WL 4129507, at *1 (W.D.N.C. Sept. 2, 2008), *aff'd*, 588 F.3d 245 (4th Cir. 2009).

**FACTS**

Ms. Ramos and Mr. Cordero are citizens of Mexico. They never married. Their child, B.F.S.R., was born in Cabarrus County, North Carolina, in 2006, and is a citizen of both Mexico and the United States. Neither Ms. Ramos nor Mr. Cordero have legal immigration status in the United States.

In December 2009, Ms. Ramos and B.F.S.R. moved to Zacatecas, Mexico, where the parties had planned to build a small house on Mr. Cordero's parents' land. Mr. Cordero paid for the airplane tickets. The parties agreed that Mr. Cordero would join Ms. Ramos and the child after he earned more money in North Carolina to fund the construction. Ms. Ramos and the child lived with Mr. Cordero's family, and Ms. Ramos oversaw the construction of the parties' new home, the exterior of which was completed in March or April of 2010.

Around that time, and after Mr. Cordero kept delaying his return to Mexico, Ms. Ramos and B.F.S.R. travelled to Tijuana to stay with her family. At some point while Ms. Ramos was in Tijuana, the parties ended their romantic relationship because of Mr. Cordero's refusal to come to Mexico. In August 2010, the parties agreed that B.F.S.R. would travel to North Carolina to stay with Mr. Cordero for a visit. Before B.F.S.R. left Mexico, Mr. Cordero signed a notarized statement agreeing to return B.F.S.R. to Ms. Ramos in Tijuana on January 14, 2011, and provided the statement to Ms. Ramos. Mr. Cordero paid for B.F.S.R.'s travel expenses.

Mr. Cordero did not return B.F.S.R., despite Ms. Ramos's requests and demands. Since then, B.F.S.R. has lived with Mr. Cordero, Mr. Cordero's brother, and Mr. Cordero's sister, her husband, and her daughter. He attends school in Concord, North Carolina, he plays soccer, and he sees friends and Mr. Cordero's family regularly. Mr. Cordero has allowed only intermittent telephone and internet-video contact between the child and Ms. Ramos, and he has not

cooperated with efforts by Ms. Ramos's family members who live in the area, including her mother and brother, to see the child.

Beginning sometime after January 2011, Ms. Ramos sought assistance in securing the child's return from the American consulate and a foreign relations office in Mexico. Because she did not have copies of the child's birth certificate or passport, and because there are costs associated with obtaining copies of and translating these documents, her efforts to complete the paperwork for a Hague Convention application were delayed. In September 2011, Ms. Ramos attempted to cross over the United States border using a false passport and was arrested and deported. In March 2012, Mr. Cordero filed a custody petition in North Carolina district court. That same month, Ms. Ramos filed a Hague application to the Mexican authorities, for which the custody suit was stayed. Ms. Ramos, who is not employed, searched for an attorney to assist her, eventually obtaining representation pro bono from Legal Aid of North Carolina. She filed this petition on March 11, 2014.

## ANALYSIS AND CONCLUSIONS

The Court's review is governed by the well-settled principles for Hague Convention petitions. *See, e.g., Lozano v. Montoya Alvarez,* ___ U.S. ___, 134 S.Ct. 1224 (2014); *Alonzo v. Claudino*, No. 1:06CV00800, 2007 WL 475340, at *2 (M.D.N.C. Feb. 9, 2007.) The overarching goals are to preserve the status quo as to child custody and to deter "parents from crossing international boundaries in search of more sympathetic court." *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001). The Court's inquiry is limited to the merits of the abduction claim and not the merits of the underlying custody battle. *Id.* at 398.

To establish a prima facie case of wrongful removal or retention under the Hague Convention, a petitioner must show that "(1) the child was 'habitually resident' in the

[petitioner's] country of residence at the time of removal, (2) the removal was in breach of the [petitioner's] custody rights under the law of his home state, and (3) the [petitioner] had been exercising those rights at the time of removal." *Bader v. Kramer*, 445 F.3d 346, 349 (4th Cir. 2006).

If a petitioner establishes her prima facie case, the court must order return of the child unless the respondent establishes one of four affirmative defenses. *Id.* A respondent may establish, by clear and convincing evidence, that (1) "return would expose the child to a 'grave risk' of 'physical or psychological harm or otherwise place the child in an intolerable situation'"; or that (2) "return of the child would not be permitted by 'fundamental principles of the United States relating to the protection of human rights and fundamental freedoms.'" *Id.* (internal alterations omitted). Alternatively, a respondent may establish, by a preponderance of the evidence, that (1) "the petition for return was not filed within one year of the removal and the child is now well-settled in another country"; or that (2) "the petitioner was not actually exercising his custodial rights at the time of the removal or had consented to or acquiesced in the removal." *Id.*

The parties dispute the child's habitual residence, but they agree that if Mexico is the habitual residence, the other elements of Ms. Ramos's prima facie case are met. A child can have only one habitual residence. *Miller*, 240 F.3d at 400. In determining habitual residence, "[t]he court must look back in time, not forward," to the child's customary residence before the removal. *Id.* (internal quotation marks omitted). Though "habitual residence" is viewed from the child's perspective, when the child is very young, the court should look to "the settled purpose and shared intent of the child's parents in choosing a particular habitual residence."

4

*Whiting v. Krassner*, 391 F.3d 540, 550 (3d Cir. 2004). "[A] parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Miller*, 240 F.3d at 400.

The Court finds that B.F.S.R. was habitually residing in Mexico as of January 14, 2011, as the shared intent of the parents was to settle in Zacatecas. The parties agreed that they would move to Zacatecas and build a house on Mr. Cordero's parents' land. Mr. Cordero purchased one-way tickets for Ms. Ramos and the child. Ms. Ramos and the child traveled to Mr. Cordero's parents' home, and they began building the house, for which Mr. Cordero sent money. Even Mr. Cordero testified that he intended to join Ms. Ramos and the child in Zacatecas. They had no specific plans to return to the United States; indeed, return would have been difficult since neither parent could do so legally. Because Mexico was the habitual residence of the child and the other elements of a prima facie case are established without dispute, the Court concludes that Mr. Cordero wrongfully retained B.F.S.R. within the meaning of the Hague Convention.

Mr. Cordero asserts the "well-settled" affirmative defense.[1] *See Bader*, 445 F.3d at 349. Ms. Ramos does not dispute that she failed to file her Hague petition within one year of the removal, but she contends that B.F.S.R. is not well-settled in North Carolina.[2] In the alternative, she asks the Court to exercise its equitable discretion to return the child in view of the circumstances.

The Court concludes that a preponderance of the evidence does not show that B.F.S.R. is well-settled and that application of this narrow defense is not warranted. *See Miller*, 240 F.3d at

---

[1] Mr. Cordero raised other defenses in his Answer, but he did not proffer any evidence or make any argument in support of those defenses.

[2] Ms. Ramos initially contended that the one-year period should be tolled but later withdrew that request in view of *Lozano v. Montoya Alvarez*, ___ U.S. ___, 134 S.Ct. 1224 (2014).

5

402. While some evidence would weight in favor of a finding that the child is well-settled, there is other stronger evidence which is inconsistent with such a finding.

On the one hand, B.F.S.R. appears to have an orderly life in North Carolina, where he attends school, plays soccer, and has lived in the same residence with the same people for four years. His father has stable employment.

On the other hand, Mr. Cordero testified at the hearing in Spanish through an interpreter and the child's report cards from school were sent home in Spanish, establishing that B.F.S.R. lives in a Spanish-speaking household and community. Mr. Cordero also testified that the child's English gets better every day, making it clear that Spanish is his primary language. This indicates both that the child has not completely acclimated to a culture in which English is the predominant language and that a return to Mexico will not cause language problems common in many cases where the "well-settled" defense is applied. The child's life in North Carolina is not so different from his life in Mexico that it would be "worse to order the child to be uprooted." *See Belay v. Getachew*, 272 F. Supp. 2d 553, 562 (D. Md. 2003).

Moreover, there are significant aspects of the child's life in North Carolina that are not stable. The child has required therapy in North Carolina to deal with sadness over his parents' separation.[3] Despite this, Mr. Cordero has not allowed the child to have contact with his maternal grandparents and uncle in Cabarrus County and has not allowed the child to have regular telephone or video-internet contact with his mother. While Mr. Cordero did not conceal the child, this interference with family relationships is inherently disruptive and was particularly disruptive here. *See Lozano*, ___ U.S. at ___, 134 S. Ct. at 1236 (noting with approval that

---

[3] Mr. Cordero's testimony on this point was not entirely clear as to the reasons for the mental health treatment or the exact condition which necessitated treatment, but the Court finds this to be a fair assessment of that testimony, in the absence of any medical records.

6

"American courts have found as a factual matter that steps taken to promote concealment can also prevent the stable attachments that make a child 'settled'" and citing cases.) This compares negatively to B.F.S.R.'s situation when he resided in Mexico, where he maintained relationships with both parents' families in that country. *See, e.g., Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1349 (S.D. Fla. 2002) (noting that "substantial meaningful connections in the country from which the child was removed should be considered" in the settled analysis).

Finally, Mr. Cordero's immigration status makes B.F.S.R.'s living situation tenuous, as his primary caretaker could be arrested and deported to Mexico at any time. *See In re R.V.B.*, ___ F. Supp. 2d ___, 2014 WL 3058250 at *12 (E.D.N.Y. July 7, 2014) (noting that "the immigration status of [the abducting parent] is a factor that disfavors finding the Child is settled"); *cf. Kijowska v. Haines*, 463 F.3d 583, 587 (7th Cir. 2006) (considering mother's illegal status in concluding that child was not habitual resident of United States); *Alonzo*, 2007 WL 475340, at *5 (considering mother and child's illegal status in concluding child was not habitual resident of United States). Mr. Cordero testified that he does not have a driver's license yet regularly drives, making contact with law enforcement a distinct possibility. *See In re R.V.B.*, 13-CV-4354, 2014 WL 3058250 at *12 ("While there is no evidence that deportation is imminent, and indeed, may never occur, it is a threat that clouds the Child's daily living.")

Weighing all of these considerations, the Court finds that Mr. Cordero has not established the "well-settled" defense by a preponderance of the evidence.

In the alternative, equitable justifications warrant the Court's exercise of its discretion even if B.F.S.R. is well-settled. *See Miller*, 240 F.3d at 402; *see generally Lozano*, ___ U.S. at ___, 134 S. Ct. at 1236-1240 (Alito, J., concurring) (discussing factors relevant to the exercise of discretion in light of the equities). Ms. Ramos is unable to legally come to the United States for

a custody hearing, whereas there are no legal impediments to Mr. Cordero's return to Mexico, where he is a citizen, for participation in a custody hearing there. Mr. Cordero also limited or even prevented opportunities for Ms. Ramos and her family to maintain a relationship with B.F.S.R. after the wrongful abduction. *See Antunez-Fernandes v. Connors-Fernandes*, 259 F. Supp. 2d 800, 815 (N.D. Iowa 2003) (considering abducting parent's attempts to sever meaningful relationship with petitioner in exercising discretion to return child). Finally, Ms. Ramos has also convincingly shown that her delay in filing the petition should not weigh against her as the Court balances the equities.[4]

It is therefore **ORDERED** that the petition, (Doc. 2), is **GRANTED**. Judgment will be entered concomitantly herewith.

This the 6th day of August, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Ms. Ramos initiated efforts to retrieve B.F.S.R. soon after he was wrongfully retained and even attempted to illegally re-enter the country so she could see her son. Moreover, Mr. Cordero was financially supporting Ms. Ramos up until their breakup, Ms. Ramos is indigent, and she diligently pursued pro bono representation. Mr. Cordero abducted B.F.S.R. with knowledge that Ms. Ramos did not have the legal or financial means to enforce her rights. *See, e.g., Belay* 272 F. Supp. 2d at 561; *cf. Lozano*, ___ U.S. at ___, 134 S. Ct. at 1236-1240 (Alito, J., concurring) (approving consideration of concealment in exercise of equitable discretion.)